NOTICE
Decision filed 08/02/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 150472

NO. 5-15-0472

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| BELINDA CARSTENS-WICKHAM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-L-545 |
| | ) | |
| JOAO SEDYCIAS and ALDEMARO | ) | |
| ROMERO, | ) | Honorable |
| | ) | A. A. Matoesian, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE STEWART delivered the judgment of the court, with opinion.
Presiding Justice Schwarm and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff, Belinda Carstens-Wickham, a tenured professor at Southern Illinois University Edwardsville (SIUE or University), brought this action in the circuit court of Madison County, seeking damages for alleged libel, slander, and intentional infliction of emotional distress.  The defendants, Joao Sedycias, a former department chair at SIUE, and Aldemaro Romero, a former dean at SIUE, moved to dismiss the plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)).  The defendants claimed that they were State employees immune from suit in

1

court pursuant to the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2014)) and argued that the Illinois Court of Claims had exclusive jurisdiction over the plaintiff's tort claims. The circuit court agreed and dismissed the plaintiff's complaint for lack of subject matter jurisdiction. The plaintiff appeals. For the reasons that follow, we reverse and remand for further proceedings.

¶ 2                                   BACKGROUND

¶ 3    In her second amended complaint, the plaintiff alleged the following. She is a tenured professor in the foreign languages and literature department at SIUE, which is within the college of arts and sciences. At the time of the alleged incidents, Sedycias was chair of the foreign languages and literature department, and Romero was dean of the college of arts and sciences. The department chair is elected by a faculty vote. In early 2014, the plaintiff and Sedycias were on the ballot for the department chair position. Romero, as dean, removed the plaintiff from the ballot and supported Sedycias.

¶ 4    The plaintiff alleged that the defendants conspired to libel and slander her and to intentionally inflict emotional distress on her by communicating/publishing false allegations of sexual misconduct in a manner that was outside their employment duties to ruin her reputation and mentally harm her. She alleged that, knowing she would be elected chair, they conspired to remove her from the ballot based on false allegations.

¶ 5    The plaintiff protested her removal from the ballot to the provost, who found in her favor. The defendants appealed the provost's decision, preparing and sending a letter dated February 21, 2014, and signed by Sedycias to the president of the Southern Illinois University System. The plaintiff alleged that the letter was libelous and contained false

2

allegations, including false allegations of sexual misconduct. The letter, which was incorporated by reference into the complaint, provides, in pertinent part, as follows:

"In his memo of 10 January 2014, Dean Romero provides the following reasons for removing Dr. Carstens-Wickham from the list of possible candidates (emphasis [Sedycias's]):

\* \* \*

[']\*\*\* [I]t has been reported to me by multiple sources that *Dr. Carstens-Wickham has \*\*\* shown a number of character flaws unbecoming of a member of the SIUE community.* I have received multiple reports from multiple sources that *she had a child from one of her undergraduate students and has had sexual relationships in her office on the SIUE campus with a former SIUE faculty member.* I have witnesses who can testify about these and *many other incidents that include, but are not limited to, harassment, intimidation, and providing misleading information to the faculty.*' " (Emphasis in original.)

¶ 6 The plaintiff alleged that SIUE policy mandates that material filed in the appeal process, including the letter, be kept confidential. In early 2014, she learned that Sedycias had been contacting all of the department chairs and other officials within the college of arts and sciences and giving them a copy of the letter. She alleged that, acting outside the scope of their employment, outside the appeal process, and outside SIUE rules and guidelines, the defendants distributed the letter and false information contained therein to all department chairs and other officials within the college of arts and sciences

3

and orally distributed the false information to persons throughout SIUE. She alleged that, by distributing the letter and false information, they acted intentionally and maliciously to try to ruin her reputation and damage her mentally.

¶ 7    In counts I and III, the plaintiff alleged libel and slander claims. She alleged that the statements contained in the letter (1) were false, (2) were libel *per se* if written and slander *per se* if spoken, and (3) on their face provided a basis to cause her extreme emotional distress. She alleged that, by knowingly making false allegations of sexual misconduct to SIUE officials, the defendants acted in violation of state law and with malice.

¶ 8    In counts II and IV, the plaintiff alleged intentional infliction of emotional distress claims. She alleged that the defendants' actions were intentional and were taken to damage her emotional and mental health to the extent that she could not perform her duties as a faculty member and that she would be held in such low regard that she could not be elected as department chair and her connection to SIUE would be terminated. She alleged that the false allegations of sexual misconduct and the attempt to spread the same throughout the college of arts and sciences was outrageous conduct, beyond the bounds of decency, and intended to destroy her mentally and professionally.

¶ 9    In count V, the plaintiff alleged a slander claim against Romero only. She alleged that on March 4, 2015, while interviewing for a position at Columbus State University in Georgia, Romero was questioned in a public forum by members of that community. When asked about the litigation involving the plaintiff, he stated that he had to remove her as department chair "because she was having sex with a student." She alleged that,

4

when he made the statement, he knew it was false and that he made it with malice and in an attempt to damage her. She alleged that a former colleague, who was present at the public forum, heard Romero's statement, as did everyone else in attendance.

¶ 10 The defendants filed motions to dismiss the plaintiff's complaint pursuant to section 2-619, arguing that they were State employees immune from suit in court pursuant to the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2014)). They argued that the Illinois Court of Claims had exclusive jurisdiction over the plaintiff's tort claims and that the circuit court, therefore, lacked subject matter jurisdiction.

¶ 11 Romero filed an affidavit in support of his motion to dismiss, stating the following. He had been employed by SIUE since 2009 and was dean of the college of arts and sciences from 2009 until 2014. Attached to his affidavit was a copy of the operating paper of the college of arts and sciences. The dean is the chief academic and administrative officer of the college, is the fiscal officer of the college, and has general responsibility for supervision and operation of the college. The dean's responsibilities include making personnel decisions, including hiring faculty members. The dean is also involved in selecting department chairs and has the power to remove department chairs.

¶ 12 The plaintiff was under Romero's oversight when he was dean. In Romero's affidavit, he stated that, in his role as dean and as an SIUE employee, he had written and verbal communications with other SIUE personnel about the plaintiff; that all such communications were related to her status, conduct, and/or performance as an SIUE employee; that he did not have any communications with any SIUE employee about her that were unrelated to carrying out his responsibilities as dean; that his communications

5

about her actions were conducted within the course and scope of his employment; and that his communications about her involved matters within his normal and official functions, including determining candidates for department chairs.

¶ 13 Romero's affidavit stated that, pursuant to SIUE policy, he had a responsibility as dean and as an SIUE employee to help "maintain a work environment free from all forms of sexual harassment." A copy of SIUE's sexual harassment complaint procedures was attached to his memorandum of law in support of his motion to dismiss. His affidavit stated that SIUE policy provides that "Members of the University community who have knowledge of [sexual harassment] incidents should encourage victims of sexual harassment to consult with sexual harassment information advisors, if needed."

¶ 14 In his memorandum of law in support of his motion to dismiss, Romero addressed the plaintiff's allegation that, at a public forum at Columbus State University in Georgia, he stated that he had to remove her as department chair "because she was having sex with a student." In his memorandum of law, he stated that the plaintiff alleged that he "made statements during a job interview about matters that were solely within his knowledge because of his employment with a State University" and that she made "no allegation that [he] volunteered this information during his job interview–merely that he responded to a question about his knowledge of a University-related matter."

¶ 15 Sedycias also filed an affidavit in support of his motion to dismiss, stating as follows. He had been employed by SIUE since July 1, 2011, and was chair of the foreign languages and literature department from that date until June 30, 2014. The chair reports to the dean of the college of arts and sciences; is the chief academic and administrative

officer of the department; and has broad duties and responsibilities, including evaluating faculty and making salary, promotion, and tenure recommendations.

¶ 16   The plaintiff was under Sedycias's oversight when he was chair.  In his affidavit, Sedycias stated that, as chair and as an SIUE employee, he had written and verbal communications with other SIUE personnel about the plaintiff; that any and all such communications were related to her status, conduct, and/or performance as an SIUE employee; that he did not have any communications with any SIUE employee about her that were unrelated to carrying out his responsibilities and role as chair; and that his communications about her actions were conducted within the course and scope of his employment and involved matters within his normal and official functions as chair.

¶ 17   Sedycias's affidavit stated that, pursuant to SIUE policy, he had a responsibility as chair and as an SIUE employee to help "maintain a work environment free from all forms of sexual harassment."  Sedycias's affidavit stated that SIUE policy provides that "Members of the University community who have knowledge of [sexual harassment] incidents should encourage victims of sexual harassment to consult with sexual harassment information advisors, if needed."

¶ 18   The plaintiff filed responses to the defendant's motions to dismiss.  She denied that her claims were barred by the doctrine of sovereign immunity and argued that the circuit court had subject matter jurisdiction.

¶ 19   The plaintiff also filed an affidavit in support of her responses to the defendants' motions to dismiss, stating the following.  She is employed in the foreign languages and literature department at SIUE and was department chair from 2002 to 2011.  She has also

served on administrative committees at SIUE and has direct knowledge of the interaction between the faculty, department chair, and dean. She was on the committee to evaluate Romero's performance and voted with the majority (7 to 3) to terminate him as dean.

¶ 20   The plaintiff's affidavit stated that she was on the ballot for department chair, that the defendants conspired to and did remove her from the ballot, and that they told the faculty that they could either vote for Sedycias or not vote at all. She stated that she led the opposition to Sedycias's election as chair, and he got only 3 out of 11 possible votes.

¶ 21   In her affidavit, the plaintiff stated that she appealed her removal from the ballot to the provost, who determined that the allegations contained in the letter were unfounded, voided the election, and reinstated her to the ballot. The defendants appealed the provost's decision to the president of the Southern Illinois University System and sent the letter as part of the appeal process. The president affirmed the provost's decision.

¶ 22   The plaintiff's affidavit stated that the allegations contained in the letter were to be kept confidential as part of the appeal process and that the defendants violated SIUE policy by failing to do so. She stated that, at the conclusion of the appeal, the defendants published (communicated) the letter to other department chairs within the college of arts and sciences, to other faculty, and to various unknown persons–all of whom had nothing to do with the appeal of the provost's decision, the ballot for department chair, or the day-to-day operations of the department and had no supervisory authority over her.

¶ 23   In her affidavit, the plaintiff expressed opinions based on her background and experience and her review of SIUE policies and procedures and the operating paper of the college of arts and sciences. She opined that distributing the letter to persons outside the

8

appeal process, outside the department, and with no supervisory authority over her was not related to the defendants' jobs as dean or chair. She asserted that, upon losing the appeal of the provost's decision, they decided to slander and libel her and to inflict emotional distress on her to try to destroy her reputation and make her leave her job.

¶ 24 The plaintiff's affidavit opined that the defendants' actions in distributing the letter outside the appeal process were not part of their duties or responsibilities under the operating paper of the college of arts and sciences or SIUE policies and procedures. She stated that the operating paper did not include the commission of intentional torts within the realm of the administrative duties of dean or department chair.

¶ 25 In her affidavit, the plaintiff disputed the defendants' claims that distribution of the letter outside the department was related to her status, conduct, and/or performance as an SIUE employee. She stated that distribution of the letter outside the department was not related to the defendants' jobs as dean or chair because the recipients of the letter had nothing to do with her.

¶ 26 The plaintiff's affidavit stated that, as a faculty member and former department chair, she was aware of the administrative requirements and responsibilities of handling sexual harassment or assault reports or claims. She stated that the defendants did not use SIUE procedures to investigate a claim of any sexual misconduct by her. She stated that SIUE's sexual harassment complaint procedures provide for informal and formal notice of sexual harassment allegations and that she was never given such notice as to the allegations contained in the letter. She stated that SIUE procedures also include complaint procedures that provide for confidential resolution of unfounded claims.

9

¶ 27   In her affidavit, the plaintiff stated that, under SIUE procedures, claims of sexual misconduct, harassment, and/or assault are not to be handled by the chair of the foreign languages and literature department or the dean of the college of arts and sciences. Rather, such complaints are to be addressed by independent SIUE personnel under procedures that give the person complained of an opportunity to refute the charges.

¶ 28   On October 16, 2015, the circuit court dismissed the plaintiff's complaint with prejudice for lack of subject matter jurisdiction.  The plaintiff filed a timely appeal.

¶ 29                                ANALYSIS

¶ 30   The standards governing this appeal are familiar.  A motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)) admits the legal sufficiency of the complaint, but asserts affirmative matter that defeats the claim. *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 40.  Among those affirmative matters is that the court lacks subject matter jurisdiction.  735 ILCS 5/2-619(a)(1) (West 2014).  That is the basis for the motion filed in this case.

¶ 31   When reviewing an order granting a motion to dismiss pursuant to section 2-619, we may consider all facts presented in the pleadings, affidavits, and depositions in the record.  See *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 396 (2009).  Accordingly, despite the defendants' argument to the contrary, we may consider the plaintiff's response to their motions to dismiss and her affidavit in support even though they were filed in response to the defendants' motions to dismiss her amended complaint rather than her second amended complaint.  The plaintiff's amended complaint and second amended complaint were almost identical, the defendants' motions to dismiss both complaints were

10

almost identical, and the defendants used the same affidavits in support of their motions to dismiss both complaints.

¶ 32 Consistent with their decision to invoke section 2-619, the defendants do not and cannot challenge the legal sufficiency of the plaintiff's complaint. For present purposes, the defendants accept that the plaintiff has stated legally cognizable claims against them. Their contention is simply that she has brought her claims before the wrong tribunal. In their view, the only tribunal authorized by law to consider her complaint is the Illinois Court of Claims.

¶ 33 The circuit court agreed and dismissed the plaintiff's complaint for lack of subject matter jurisdiction. We review *de novo* a circuit court's dismissal for lack of subject matter jurisdiction. *Leetaru*, 2015 IL 117485, ¶ 41.

¶ 34 The defendants' jurisdictional challenge is premised on principles of sovereign immunity. "The doctrine of sovereign immunity was abolished in Illinois by the 1970 Constitution '[e]xcept as the General Assembly may provide by law.' " *Id.* ¶ 42 (quoting Ill. Const. 1970, art. XIII, § 4). As it was authorized to do under this provision, the General Assembly subsequently reinstated the doctrine of sovereign immunity through enactment of the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2014)). *Leetaru*, 2015 IL 117485, ¶ 42. Section 1 of the State Lawsuit Immunity Act provides that except as provided in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2014)) and several other specified statutes, "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2014). Section 8 of the Court of Claims Act, in turn, provides that the Court of Claims shall have exclusive jurisdiction over nine

11

enumerated matters, including "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." 705 ILCS 505/8(d) (West 2014).

¶ 35 This language is clear and unambiguous; all claims against the State for damages sounding in tort must be brought in the Court of Claims, and no other tribunal, including our circuit courts, has jurisdiction of any such claim. *Fritz v. Johnston*, 209 Ill. 2d 302, 310 (2004). The question is, thus, whether this case involves "claims against the State."

¶ 36 The plaintiff does not purport to assert a claim against the State. Rather, she names as defendants two individual employees of the State. The defendants contend, however, that the exclusive jurisdiction provision of the Court of Claims Act should nevertheless apply because, notwithstanding the formal designation of the parties, the lawsuit actually seeks to control the actions of the State or subject it to liability and that it is, therefore, tantamount to an action against the State itself.

¶ 37 The defendants are correct that the formal designation of the parties is not dispositive for purposes of the Court of Claims Act. *Leetaru*, 2015 IL 117485, ¶ 44. In determining whether sovereign immunity is applicable in a given case, substance takes precedence over form. *Id.* That an action is nominally one against individual State employees does not mean that it will not be considered as one against the State itself. *Id.*

¶ 38 The determination of whether an action is, in fact, one against the State and, therefore, one that must be brought in the Court of Claims depends on the issues involved and the relief sought. *Id.* ¶ 45. Sovereign immunity cannot be avoided by making an action nominally one against State employees when the real claim is against the State

12

itself and when the State is the party vitally interested. *Id.* Sovereign immunity affords no protection, however, when it is sufficiently alleged that State employees acted in violation of statutory or constitutional law or in excess of their authority. *Id.* In those instances, the action is not against the State and may be brought in circuit court. *Id.*

¶ 39 However, an action brought nominally against State employees in their individual capacities will be found to be claims against the State where a judgment for the plaintiff could operate to control the State's actions or subject it to liability. *Currie v. Lao*, 148 Ill. 2d 151, 158 (1992).

¶ 40 Our supreme court has adopted a three-part test to determine whether an action against State employees is, in fact, an action against the State itself. *Healy v. Vaupel*, 133 Ill. 2d 295, 309 (1990). An action is against the State when the following factors are present: (1) there are no allegations that State employees acted beyond the scope of their authority through wrongful acts; (2) the duty allegedly breached was not owed to the public generally independent of the State employment; and (3) the actions complained of involve matters ordinarily within the employees' normal and official State functions. *Id.*

¶ 41 Under the foregoing authorities, the plaintiff's causes of action may proceed in circuit court without offending principles of sovereign immunity. The plaintiff does not question the defendants' right to send the letter to the president of the Southern Illinois University System as part of the appeal process. That is something that they clearly had the authority to do in furtherance of SIUE's educational mission. Rather, her claims are based on the defendants' conduct after the appeal process was completed. Her argument is that by distributing the letter and the false statements contained therein outside of the

13

appeal process and to others outside of the department, the defendants exceeded their authority, acted outside the scope of their employment, and violated SIUE's policies and procedures. The defendants' alleged acts are not simply the result of some inadvertent oversight or *de minimis* technical violation. Rather, according to the plaintiff, the defendants maliciously and intentionally retaliated against her by making the false statements in order to ruin her reputation, remove her from the chair election, make her quit her job, and harm her mentally and emotionally.

¶ 42 Because sovereign immunity affords no protection when State employees have acted in violation of law or in excess of their authority, which is precisely what the plaintiff has alleged in her verified complaint and affidavit, Illinois precedent compels the conclusion that she was entitled to proceed in circuit court. The circuit court, therefore, erred in dismissing her complaint for lack of subject matter jurisdiction.

¶ 43 In so holding, we recognize that, in their affidavits in support of their motions to dismiss, the defendants stated that all of their communications with other SIUE personnel about the plaintiff were related to her status, conduct, and/or performance as an SIUE employee; that they did not have any communications with any SIUE employee about her that were unrelated to carrying out their responsibilities as dean or department chair; that their communications about her actions were conducted within the course and scope of their employment; and that their communications about her involved matters within their normal and official functions as dean or department chair. However, when ruling on a motion to dismiss pursuant to section 2-619, the pleadings and supporting documents, including the affidavits, must be interpreted in the light most favorable to the plaintiff, as

14

the nonmoving party. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 34. In her verified complaint and affidavit in response to the defendants' motions to dismiss, the plaintiff clearly disputed these statements. These disputed facts must be construed in the plaintiff's favor for purposes of a motion to dismiss pursuant to section 2-619.

¶ 44 As we noted at the outset of our analysis, by moving to dismiss pursuant to section 2-619, the defendants have admitted the legal sufficiency of the plaintiff's causes of action. Whether the defendants' conduct is, in fact, actionable is a question that they may pursue further on remand. For purposes of this appeal, however, it is not at issue.

¶ 45                                                    CONCLUSION

¶ 46 For the foregoing reasons, the judgment of the circuit court of Madison County is reversed and the cause is remanded for further proceedings.


¶ 47 Reversed and remanded.

2016 IL App (5th) 150472

NO. 5-15-0472

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| BELINDA CARSTENS-WICKHAM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-L-545 |
| | ) | |
| JOAO SEDYCIAS and ALDEMARO | ) | |
| ROMERO, | ) | Honorable |
| | ) | A. A. Matoesian, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

**Opinion Filed:**          August 2, 2016

_____

**Justices:**          Honorable Bruce D. Stewart, J.

                  Honorable S. Gene Schwarm, P.J., and
                  Honorable Richard P. Goldenhersh, J.,
                  Concur

_____

**Attorneys**          Leslie G. Offergeld, John D. Wendler, Walker and Williams, P.C.,
**for**          4343 West Main Street, Belleville, IL 62226
**Appellant**

_____

**Attorneys**          Greg Roosevelt, Roosevelt Law Office, 610 St. Louis Street,
**for**          Edwardsville, IL 62025 (attorney for Joao Sedycias); Ian P. Cooper,
**Appellee**          Tueth, Keeney, Cooper, Mohan & Jackstadt, P.C., 34 North
                  Meramec Avenue, Suite 600, St. Louis, MO 63105 (attorney for
                  Aldemaro Romero)

_____